[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION MOTION TO DISMISS
FACTS;
On April 4, 1994, the defendant was arrested pursuant to a warrant for a violation of General Statute §§ 12-227a and14-218a. This arrest followed a one car accident which had occurred on North Sterling Road in Sterling, Connecticut on August 5, 1993. The defendant entered not guilty pleas on May 5, 1994 and the case was continued until June 20, 1994 for pre-trial. Unable CT Page 1493-A to resolve the case at that time, the case was set down for jury trial and has remained on that list to the present date. On June 22, 1994 the state filed a second part of the Information alleging that the defendant was a third offender and, as such, subject to the enhanced penalties set forth in General Statutes § 14-227a(h).[1]
On April 22, 1994 the Connecticut Department of Motor Vehicles (DMV) informed the defendant that pursuant to 14-227b, the so-called "per se" administrative suspension law, that as a subsequent offender, his license would be suspended for a period of two years for violating CGS § 14-227a.
General Statutes 14-227a provides in pertinent part: "OPERATION WHILE UNDER THE INFLUENCE OF LIQUOR OR DRUG OR WHILE IMPAIRED BY LIQUOR. (a) OPERATION WHILE UNDER THE INFLUENCE. No person shall operate a motor vehicle while under the influence of intoxicating liquor . . . . A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor . . . if he operates a motor vehicle on a public highway of this state . . . (1) while under the influence CT Page 1493-B of intoxicating liquor . . . or (2) while the ratio of alcohol in the blood of such person is ten-hundredths of one percent or more of alcohol by weight[.]"
On Friday May 13, 1994 the Department of Motor Vehicles held a hearing in Old Saybrook to determine whether the defendant's operator's license should be suspended. The Notice of Hearing provided "Then and There to have the opportunity to respond to the claim that you failed to pass a chemical alcohol test after being arrested for driving under the influence of alcohol, . . ."
The Suspension Notice to the defendant states "Reason For Suspension: Failing a Chemical Alcohol Test"
A decision was rendered on May 18, 1994 by Hearing Officer Gail Kotowski. The hearing officer found that she was unable "to relate failure of BAC to operation, as the blood test only provided the readings and the time of operation is unknown". The defendant's operators license, if ever suspended, was restored.
On February 15, 1995 the above captioned motor vehicle case CT Page 1493-C was assigned for jury trial wherein the State seeks a criminal conviction for the conduct which was the subject of his prior motor vehicle hearing before the DMV Hearing Officer. The Defendant filed a Motion to Dismiss alleging a violation of the double jeopardy clause of the fifth amendment to the U.S. Constitution. The court ordered jury selection to commence and took the motion under advisement.
Practice Book § 815(6) provides that a motion to dismiss the information may be made in a criminal case to raise a defense or objection to a "previous prosecution barring the present prosecution".
Double Jeopardy
"The double jeopardy clause of the fifth amendment to the United States constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." "This clause prohibits not only multiple trials for the same offense but also multiple punishments for the same offense. Brown v. Ohio, 432 U.S. 161, 165, 97 S.Ct. 2221, 53 CT Page 1493-D L.Ed.2d 187 (1977)." State v. John, 210 Conn. 652, 693,557 A.2d 93 (1989), cert. denied, 493 U.S. 824, 110 S.Ct. 84,107 L.Ed.2d 50 (1989). This constitutional provision applies to the states through the due process clause of thefourteenth amendment. Benton v. Maryland, 395 U.S. 784, 787,89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); State v. Woodson, 227 Conn. 1, 7,629 A.2d 386 (1993). Although the Connecticut constitution does not include a specific double jeopardy provision, the due process guarantee of article first, § 9, of our state constitution has been held to encompass protection against double jeopardy. Kohlfuss v. Warden, 149 Conn. 692, 695,183 A.2d 626, cert. denied, 371 U.S. 928, 83 S.Ct. 298,9 L.Ed.2d 235 (1962); see also State v. Anderson, 211 Conn. 18, 25 n. 8,557 A.2d 917 (1989)." State v. Walker, 35 Conn. App. 431, 433
(1994)[.] See also State v. Chicano 216 Conn. 699, Cert denied501 U.S. 1254 (1991). It should be noted that the Constitution does not bar multiple punishments if imposed in the same proceeding; they are barred if imposed in separate proceedings. UnitedStates vs. Halper 490 U.S. 434, 450-51 (1989); Missouri vs.Hunter, 459 U.S. 359, 368-69 (1983).
There are three aspects to the to the constitutional CT Page 1493-E protections afforded under double jeopardy. They relate to jeopardy resulting from a second prosecution following an acquittal; jeopardy resulting from a second prosecution following conviction; and jeopardy resulting from multiple punishments for the same offense. North Carolina v. Pearce,395 U.S. 711, 717 (1969), United States vs Halper, supra, 440. It is the latter protection which the defendant seeks in this case. It is the belief of the defendant that the sanctions which may be imposed by the administrative "per se" license suspension provisions, to wit, suspension of his "Connecticut driver's license or right to operate a motor vehicle in Connecticut" are a "punishment" within the contemplation of the double jeopardy clause and since he has previously been exposed to that jeopardy, he can not now be exposed to a second jeopardy in the present criminal proceedings brought under § 14-227a.
Civil Sanctions As Punishment
In the Halper case, supra, the Supreme Court determined that the label of "criminal" or "civil" may well have been a distinction without a difference and thus of little guidance in CT Page 1493-F determining what exactly constitutes a "punishment". The Court ruled that we should look to the goal of the sanction to see if it is solely to serve a remedial purpose or rather, is retributive or deterrent in purpose, which are more properly goals of punishment. Id. at 448[.]
This decision of the Supreme Court was reinforced and amplified as it relates to the excessive fines clause of theeighth amendment which limits the government's power to punish. The court in Austin v. United States, ___ U.S. ___,113 S.Ct. 2801, (1993) utilizing the Halper test concluded that a statutory forfeiture was a "punishment" since the historical purpose of common law forfeiture was ". . at least in part, to punish the owner." Id. at 113 S.Ct. at 2810. It is clear from a reading of these two cases that a court must look to the history and purpose of the sanction to determine whether it is designed to be remedial such as reimbursing the government for necessary expenses, or retributive or deterrent in purpose which are more in the nature of punishment.
It is not sufficient to determine if the proceeding is "civil" CT Page 1493-G or "criminal".
After Halper and Austin, the Supreme Court expanded on its' earlier holdings in the recent case of Department of Revenue ofMontana v. Kurth Ranch, 511 U.S. ___, 114 S. Ct 1937 (1994), hereinafter referred to as "Kurth Ranch". The Court addressed the issue of double jeopardy as it relates to the imposition of a "civil" tax on the possession of marijuana following the defendant's criminal conviction. The Court indicated that "fines, penalties and forfeitures are readily characterized as sanctions, taxes are typically different because they are usually motivated by revenue raising rather than punitive purposes." Id. 114 S.Ct. at 1946. In determining that this tax was not motivated by the usual revenue generating considerations for which taxes are historically levied, the Court ruled that it was rather designed for punitive purposes. 114 S.Ct. at 1946.
The Kurth Ranch test can be stated as follows; if a consequence is to be deemed a civil, non-jeopardy attaching action, it must be strictly remedial, that is, limited to the single goal of merely reimbursing the government for its actual CT Page 1493-H cost arising from the defendant's criminal conduct. If the proceeding is at all punitive the double jeopardy protection attaches. Id at 1945, citing Halper at 1901-1902.
A caveat to the holding in Kurth Ranch is that the Court reserved the issue of whether an "ostensibly civil proceeding that is designed to inflict punishment may bar a subsequent proceeding that is admittedly criminal in character."114 S.Ct. at 1947 n. 21. The defendant urges the court to follow two recent decisions. A Texas court and a U.S. District Court have each answered that query in the affirmative, that is, a prior civil proceeding where punishment is imposed, can bar a subsequent criminal proceeding arising from the same conduct.
In Fant vs Texas, 881 S.W.2d 830 (1994), the appellant was arrested and charged with possession of a controlled substance with intent to deliver. He was subsequently the subject of forfeiture proceedings. The forfeiture proceedings resulted in an agreed judgment wherein the appellant forfeited $3,823 in U.S. currency and a cellular phone. Subsequent to the civil judgment, the appellant successfully argued that the state CT Page 1493-I was barred from prosecuting him in the criminal proceedings claiming the constitutional protections against double jeopardy. The Texas Appellate Court followed Halper, Austin and KurthRanch in making its' double jeopardy analysis.
In United States vs McCaslin ___ F. Supp. ___, (1994) (W.D.Wash, Sept. 3, 1994), the defendant whose house had been lost in a related forfeiture case, argued that subsequent criminal proceedings arising from the same conduct that gave rise to the civil forfeiture were barred by the double jeopardy clause. The District Court agreed. In citing the holding in the Kurth Ranch
case, the court said ". . A civil action aimed at extracting a penalty, and a criminal prosecution directed to the same offense, even when filed close in time, constitute two separate proceedings when pursued in separate cases and conclude at different times." The court then found the subsequent criminal trial and conviction to be unconstitutional and vacated the conviction and sentence.
Justice Scalia, dissenting in Kurth Ranch observed:
In the present case, as in Halper itself, we confront the CT Page 1493-J relatively easy task of disallowing a civil sanction because criminal punishment has already been imposed. But many cases, including one being held for this case, will demand much more of us: disallowing criminal punishment because a civil sanction has been imposed . . .
 . . . if there is a constitutional prohibition on multiple punishments, the order of punishment cannot possibly make any difference. Accord, United States v. Sanchez-Escarena, 950 F.2d 193, 200 (CA5 1991)." Kurth Ranch, supra 114 S.Ct. 1958.
The reasoning of the Supreme Court in Kurth Ranch was adopted here in Connecticut in the recent case of Vito Covellivs Allen A. Crystal, Commissioner of Revenue Services, Superior Court at Hartford (Blue, J.), Tax Session No. 534178, 13 Conn. L. Rptr. No 5, 148 (January 30, 1995). In holding that the imposition of a tax under the Marijuana and Controlled Substance Tax Statute, CGS § 12-650 is a violation of the fifth amendment guarantee against double jeopardy when applied against a person who has been previously criminally convicted for the possession CT Page 1493-K of the same drugs, Judge Blue determined from the legislative history that the statute was expressly articulated to have a punitive purpose and therefore under Kurth Ranch analysis, the subsequent proceeding was subject to the Double Jeopardy Clause.
The defendant implicitly urges this court to a) find that the DMV hearing was a separate proceeding within the contemplation of the double jeopardy clause; b) determine that the sanction to be imposed was punitive not remedial under theHalper, Austin and Kurth Ranch analysis; and c) rule that, in Connecticut a Department of Motor Vehicle hearing can act as a bar to subsequent criminal proceedings. The court is unprepared to travel down this road on the facts of this case.
As earlier indicated, the hearing examiner in the defendant's case imposed no sanction. The common denominator in all of the cases raised by the defendant is actual prior punishment. In Halper and in Kurth Ranch, the Court recognized "this constitutional protection is intrinsically personal" and that only "the character of the actual sanctions" can substantiate a possible double jeopardy violation. 490 U.S. at CT Page 1493-L 477." Kurth Ranch 114 S.Ct. at 1946. Further, Chief Justice Rehnquist, writing in dissent, indicated that the majority had properly framed the issue to be: "The proper question to be asked is whether the Montana Drug tax constitutes a second punishment under the Double Jeopardy Clause for conduct alreadypunished criminally." Id. at 1950 (emphasis added). None of the cases discussed approaches the issue of whether double jeopardy protection attaches to a civil proceeding where no actual punishment occurs. This court is unwilling to extend the reasoning of the Supreme Court in Kurth Ranch to that extreme.
For the foregoing reasons, the Motion Dismiss is denied.
Foley, J.